UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Select Financial Services, LLC, | ) | |
| | ) | C/A No.: 7:05-cv-2647-GRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Penland Financial Services, Inc., and | ) | |
| Charles W. Penland | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court based on Defendant Charles Penland's outlandish conduct during a damages trial in this case, which necessitated this Court ordering that Defendant be gagged for two brief portions of the case.

## Background

This civil case was filed over four years ago, on September 13, 2005. Plaintiff alleges that Defendant and Defendant's company sold it bad accounts. On September 16, 2006, in a criminal prosecution for drug- and finance-related crimes, Defendant was sentenced to one hundred and twenty ("120") months in prison and is currently incarcerated. Although Defendant originally had attorneys in the initial stages of the civil action at issue, he long ago reached an impasse with those attorneys and is now proceeding *pro se*.

During Defendant's civil case, this Court went out of its way to ensure Defendant was adequately heard and represented. This included appointing a

guardian *ad litem* and entertaining a multitude of motions from Defendant, almost all of which were without merit. In spite of this Court's efforts and patience, Defendant refused to participate in this civil action, be it by claiming he would not communicate with the guardian *ad litem*, filing nonsensical motions, refusing to answer questions at depositions, ignoring this Court's orders, or refusing to even enter rooms in which depositions were scheduled to take place. Accordingly, after several warnings this Court ultimately struck Defendant's answer and ordered that the trial proceed on the issue of damages.

On April 15, 2008, Defendant appealed this Court's order striking his answer. The United States Court of Appeals for the Fourth Circuit dismissed this appeal the following year. By September 21, 2009, the Fourth Circuit had dismissed all remaining appeals filed by Defendant. On September 23, 2009, the clerk's office sent a notice that this Court would hold a damages hearing on November 17, 2009, to finally resolve this case.

On October 19, 2009, Defendant filed numerous requests, including a request for a jury trial. On November 5, 2009, this Court rescheduled the damages hearing. Before the damages hearing, Defendant employed further stalling techniques, including filing frivolous motions.

On December 1, 2009, this Court commenced the damages trial immediately after jury selection. Before jury selection could even begin, Defendant began a string of constant interruptions in this proceeding. The undersigned warned Defendant

repeatedly to cease his interruptions. When Defendant continued his outbursts, this Court, to maintain order in this proceeding, threatened to gag Defendant. Further interruptions by Defendant required this Court to follow through on its threat, and this Court ordered the U.S. Marshals to gag Defendant.

The Defendant was gagged with a long strip of duct tape for approximately five to ten minutes. The Court allowed Defendant to participate in jury selection by raising his hand to signify a strike. The gagging apparently accomplished its purpose, at least initially. After the gag was removed, the Court permitted Defendant to make an opening statement. The undersigned had to repeatedly warn Defendant about raising the issue of liability, and Defendant proceeded to argue with the Court.

After the trial had concluded, and after Defendant had an opportunity to cross the witness and make a closing statement, he resumed interrupting the proceedings. This Court again cautioned Defendant about interrupting and attempting to stall the trial. The undersigned ordered that the gag be put back on Defendant so the Court could instruct the jury. Within five minutes, in a further effort to stall these proceedings, Defendant feigned illness. Although the Court had been warned by various guards that Defendant planned to "become" ill, this Court briefly excused the jury and had the gag removed out of an abundance of caution. The undersigned then explained to Defendant that he would tolerate no further disruptions in this case. This Court gave Defendant the option of remaining quiet or leaving the proceedings. Defendant voluntarily chose to leave. This Court then concluded jury

instructions. The trial ultimately resulted in a directed verdict for Plaintiff on compensatory damages and a jury award for punitive damages.

## Discussion

Federal courts have broad authority to maintain civility and order in their proceedings.

> The Supreme Court has long recognized the authority of federal courts "to impose silence, respect, and decorum, in their presence." *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821). Without this authority, "judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them." *In re Terry*, 128 U.S. 289, 313, 9 S.Ct. 77, 32 L.Ed. 405 (1888).

*U.S. v. Murphy*, 326 F.3d 501, 503 (4th Cir. 2003). In *Murphy*, the Fourth Circuit held that a six-month criminal sentence was an appropriate response to belligerence and disrespect. *Id*.

Additionally, the Supreme Court has held that for unusually disruptive litigants, especially prisoners, "binding and gagging might possibly be the fairest and most reasonable way to handle" such a litigant. *Illinois v. Allen*, 397 U.S. 337, 344 (1970). The Court went on to hold that "there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . : (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Id*. at 343-44. In a case similar to the one at bar, a district court in Michigan recently held gagging necessary to preserve order:

> Kean repeatedly interrupted the court . . . . The trial judge repeatedly warned him not to speak out of turn in front of the jury [and] threatened to hold him in contempt . . . . Nonetheless, the trial judge did allow Kean to make a statement about any evidence or defense he had, with Kean claiming he had a mental breakdown. Despite numerous attempts to allow Kean to testify, he refused to do so, claiming he would incriminate himself without other evidence. The trial judge made numerous attempts to reason with Kean and to let him calm down. However, Kean repeatedly interrupted the trial judge . . . . The trial judge, repeatedly, warned Kean that, if he disrupted proceedings again, after the jury was brought in, he would be duct taped.

*Kean v. Trombley*, No. 07-CV-14650, 2009 WL 4042922, at *13 (E.D. Mich. Nov. 20, 2009).

Here, the Court's actions of gagging Defendant for a mere combined fifteen minutes were necessary to preserve order and ultimately less severe than the six-month sentence increase in *Murphy*. Additionally, this Court had to fashion a method of control that would allow Defendant to present his *pro se* case, while also not allowing Defendant to achieve his goal in this litigation since 2006, to delay ultimate resolution in this case. The Court needed to act swiftly and decisively to achieve these ends, and to cease Defendant's repeated, constant, and extremely disruptive interruptions, much like the lower courts in *Allen* and *Kean*. "'A judge who believes misconduct has occurred has a responsibility to act. If [a litigant] oversteps his bounds, delay in issuing warnings or taking action may lead to matters getting further out of hand and render it more difficult for the judge to maintain order during trial.'" *McBeth v. Nissan Motor Corp. U.S.A.*. 921 F.Supp. 1473, 1485 (D.S.C. 1996) (quoting *In re Cooper*, 821 F.2d 833, 843 (1st Cir. 1987)).

Therefore, this Court acted appropriately in gagging Defendant for two brief periods of time to restore order.

**IT IS SO ORDERED.**

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

December 2, 2009
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Defendant has the right to appeal this Order within thirty (30) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**